**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUAN ANTONIO RODRIGUEZ PAREDES, | ) | |
| Petitioner, | ) | No. 3:26-cv-00816 |
| v. | ) | Chief Judge Cathy Bissoon |
| LEONARD ODDO, et al., | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

## I. MEMORANDUM

Now before the Court is Petitioner Juan Antonio Rodriguez Paredes's *pro se* Petition for Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 4) (the "Petition") supported by the so-styled "Legal Memorandum" (Doc. 5), as well as Respondents' Response in Opposition to Petition for Writ of Habeas Corpus (Doc. 10) (the "Response") and its exhibits. For the reasons that follow, the Petition will be granted, in part, as set forth in the below Order.

### A. Relevant Factual and Procedural Background

Petitioner was previously removed from the United States to El Salvador pursuant to a September 29, 2011 order of removal. Resp. Ex. 2 (Doc. 10-2) at 3; see also Resp. Ex. 3 (Doc. 10-3). However, Petitioner reentered the United States, and was encountered in Texas by the United States Border Patrol on June 12, 2013. Resp. Ex. 2 at 3. Border Patrol issued Petitioner a Notice of Intent/Decision to Reinstate a Prior Order (I-871), dated June 12, 2013, before releasing him into the United States three days later subject to an order of supervision. Id.; see also Resp. Ex. 4 (Doc. 10-4). Petitioner has lived in the United States since then, accruing several criminal convictions. Resp. Ex. 2 at 4.

On November 27, 2024, ICE obtained custody of Petitioner, and has detained him at the Moshannon Valley Processing Facility ("Moshannon") for now nearly 21 months.[1] Resp. Ex 2 at 3; see also Resp. Ex. 5. In the time that he has been detained by ICE at Moshannon, Petitioner has never been afforded an individualized custody status hearing before an immigration judge. Pet. ¶ 7(b). Instead, ICE conducted two internal custody reviews, most recently on May 13, 2025, both of which concluded that ICE should continue to detain Petitioner. Resp. Exs. 9 (Doc. 10-9), 10 (Doc. 10-10).

After being detained in November 2024, Petitioner applied for withholding of removal in immigration court, later petitioning the Board of Immigration Appeals to reconsider and reopen his immigration case. Pet. ¶ 11. Petitioner filed the instant habeas action challenging his detention while his petition to the Board of Immigration appeals was pending. Id. Arising from Petitioner's immigration court litigation, Petitioner now has two appeals pending in the Court of Appeals for the Third Circuit, docketed at case numbers 26-1740 and 26-2428. See June 8, 2026 Clerk Order, Rodriguez Paredes v. Attorney General, No. 26-1740 (3d Cir.), ECF No. 15 (consolidating appeals).[2] Petitioner filed motions to stay removal in both Court of Appeals cases. See Apr. 1, 2026 Clerk Order, Rodriguez Paredes, No. 26-1740, ECF No. 4-2; July 30, 2026 Clerk Order, Rodriguez Paredes v. Attorney General, No. 26-2428 (3d Cir.), ECF No. 17. The motion filed in the 26-2428 case remains pending, resulting in an administrative stay of

---

[1] Petitioner's detention history indicates that he was briefly held at FCI Lewisburg from January 22 through 23, 2026. Resp. Ex. 5 (Doc. 10-5).

[2] The Court takes judicial notice of publicly viewable docket text and documents available on the Court of Appeals for the Third Circuit's public access website. Vanderklok v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (citing Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of . . . information . . . made publicly available by government entities[.]")).

removal while the Court of Appeals considers it.[3] See July 30, 2026 Clerk Order, Rodriguez Paredes, No. 26-2428, ECF No. 17.

In this Petition, Petitioner challenges his continued detention at Moshannon on three grounds. Ground One asserts that Petitioner's detention has become unconstitutionally prolonged, violating the Fifth Amendment. Pet. ¶ 13. Ground Two maintains that Petitioner is entitled to, and has not received, a bond hearing pursuant to 8 U.S.C. § 1226. Id. Ground Three refers again to the Fifth Amendment, as well as "[i]mmigration laws," to argue that Petitioner's continued detention is improper because Petitioner's removal is unlikely in the reasonably foreseeable future. Id. As to the relief sought, Petitioner requests immediate release or, alternatively, "a bail hearing wher [sic] the government would have to provide proof that [his] detention is necessarry [sic] and in the benefit of the Government." Id. ¶ 15.

**B. Analysis**

*i. Statutory Compliance*

Contrary to Petitioner's assertion that § 1226 is the statutory basis for his detention, the record instead indicates that Petitioner is subject to a reinstated order of removal. Therefore, Petitioner is detained pursuant to 8 U.S.C. § 1231.[4] See Johnson v. Guzman Chavez, 594 U.S. 523, 526 (2021). Because § 1226 is not the basis for Petitioner's detention, Petitioner is not entitled to a bond hearing under that section. Id. Accordingly, Ground Two of the Petition fails.

As Respondent correctly argues, Petitioner's extended detention also does not violate § 1231 as a matter of statutory compliance. Section 1231(a) provides for a 90-day removal

[3] The Court of Appeals has denied Petitioner's motion to stay removal in the appeal docketed at number 26-1740. See July 29, 2026 Order, Rodriguez Paredes, No. 26-1740, ECF No. 22.

[4] The Court may properly exercise jurisdiction over Petitioner's challenge to his continued detention under § 1231. Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

period, during which the Attorney General "shall detain" the individual who had been ordered removed. See 8 U.S.C. § 1231(a)(1)(A), (2)(A). Upon the removal period's expiration, § 1231 permits that "the Government 'may' detain . . . four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Johnson v. Arteaga-Martinez, 596 U.S. 573, 578-79 (2022) (quoting § 1231(a)(6)). Notwithstanding this authorization, the Supreme Court in Zadvydas applied the cannon of constitutional avoidance to interpret § 1231 as still "limit[ing] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. In practice, a post-removal order detention period of six months or less is "presumptively reasonable" and generally authorized by § 1231, but statutory authorization for detention under § 1231 elapses where, after the six-month period, the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and the government does not respond with evidence sufficient to rebut that showing. Id. at 701.

Although Petitioner has been detained for longer than the six months presumed reasonable by Zadvydas, Petitioner has not adduced a cognizable basis per Zadvydas for why there is no significant likelihood of his removal in the reasonably foreseeable future. Accordingly, because § 1231 provides statutory authorization for Petitioner's detention, Ground Three of the Petition fails to the extent that it alleges a violation of § 1231.

*ii. Due Process*

Statutory authorization of Petitioner's detention via § 1231, as interpreted in Zadvydas, does not resolve Petitioner's as-applied Fifth Amendment challenge to his continued detention. To the contrary, "a detention could still raise constitutional concerns even if it is ostensibly

authorized by statute." Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 221 (3d Cir. 2018).[5] German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203 (3d Cir. 2020), sets the governing standard for as-applied due process challenges to prolonged immigration detention, like is alleged in Ground One of the Petition.[6] Emphasizing that immigration detention's "[r]easonableness is a 'highly fact-specific' inquiry," German Santos, 905 F.3d at 210 (quoting Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 474 (3d Cir. 2015)), the Court of Appeals for the Third Circuit provides "a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable," id. at 211. These factors are: (1) the duration of detention; (2) whether the detention is likely to continue; (3) the reasons for delay, such as a detainee's request for continuances; and (4) whether the conditions of confinement are meaningfully different from criminal punishment. Id. The Court weighs each of these factors to resolve Ground One here.

For the detention duration German Santos factor, which constitutes the "most important" consideration in the analysis, there is no "bright-line threshold" period presumed to be

---

[5] The Supreme Court abrogated Guerrero-Sanchez's statutory holding when it held in Johnson v. Arteaga-Martinez that § 1231(a)(6) does not require periodic bond hearings as a matter of statutory interpretation. See Arteaga-Martinez, 596 U.S. at 582-83. But the Court in Arteaga-Martinez did not abrogate the constitutional analysis that undergirded the Guerrero-Sanchez decision. Id. at 583; see also Guerrero-Sanchez, 905 F.3d at 222 n.11.

[6] Although German Santos involved a petitioner detained pursuant to § 1226(c), the German Santos due process framework is equally applicable for detentions authorized by § 1231. Courts in the Third Circuit, including within this district, have properly applied the German Santos factors to resolve as-applied due process challenges to detention otherwise statutorily authorized by § 1231. See Michelin v. Oddo, No. 3:23-cv-00022, 2023 WL 5044929, at *6-7 (W.D. Pa. Aug. 8, 2023); W.A.C. v. Rokosky, No. 1:26-cv-03419, 2026 WL 1383150, at *5 (D.N.J. May 18, 2026) ("Although German Santos involved detention under § 1226(c), the opinion cannot be read . . . so narrowly as to apply only to that provision."); see also Michelin v. Oddo, No. 3:23-cv-00022, 2023 WL 5672278 (W.D. Pa. Sept. 1, 2023) ("If . . . [p]etitioner's detention is authorized under § 1231(a)(6) and Zadvydas because his removal is reasonably foreseeable, then the German Santos framework logically applies to his as-applied due process challenge."), *appeal dismissed sub nom.* Michelin v. Warden Moshannon Valley Corr. Ctr., No. 23-2966, 2024 WL 1904350 (3d Cir. Feb. 2, 2024).

reasonable. Id. Nonetheless, "[u]nder § 1231(a)(6), '[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound' and 'the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.'" Guerrero-Sanchez, 905 F.3d at 225 (quoting Diouf v. Napolitano, 634 F.3d 1081, 1091-92 (9th Cir. 2011)); cf. Zadvydas, 533 U.S. at 701 (adopting a presumption that noncitizens could be reasonably detained without a hearing for six months post-removal-period because there is "reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months"). Petitioner's 637 days in immigration detention—nearly 21 months—without a custody hearing before an ostensibly neutral arbiter generates serious concern that Petitioner is being unreasonably detained. See, e.g., Michelin, 2023 WL 5044929, at *6 (detention for 18 months "weighs strongly" in § 1231 detainee's favor); W.A.C., 2026 WL 1383150, at *5 (detention under § 1231 for more than 12 months "weighs heavily in [p]etitioner's favor").

The second German Santos factor, i.e., whether Petitioner's detention is likely to continue, also tilts in favor of Petitioner. See German Santos, 965 F.3d at 211 ("When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable."). Particularly concerning, given the already lengthy period that Petitioner has been detained, Respondents freely concede that the temporal endpoint of Petitioner's challenges to his removal and the associated termination of Petitioner's stay of removal "cannot be predicted." Resp. at 10. Indeed, Petitioner is seeking stay of removal in the Court of Appeals and, if that motion is granted, Petitioner's "prolonged detention becomes a near certainty." Diouf, 634 F.3d at 1092 n.13; see also German Santos, 965 F.3d at 212 (noting that the noncitizen's petition for review by the Court of Appeals for the Third Circuit "would add months more in prison"); W.A.C., 2026 WL 1383150, at *5 ("Petitioner may seek review in the

Third Circuit and, after a short administrative stay, may request a stay of removal. Thus, regardless of the precise procedural path, the record is clear that Petitioner's detention is likely to continue for a significant additional period.").

With respect to the reasons for Petitioner's detention, the Court may not hold Petitioner's good-faith legal challenges to removal against him. See German Santos, 965 F.3d at 211. Respondents do not argue, and the record does not suggest, that Petitioner has acted in bad faith or caused unnecessary delay. This German Santos factor, accordingly, does not support either party's position. See id. at 212.

Finally, Petitioner's conditions of confinement at Moshannon are not materially different from criminal punishment. The Petition and Legal Memorandum contain unrebutted allegations that Petitioner is confined in a small cell most of the time, handcuffed when he is transported out from his cell, afforded no outdoor access and given only restricted access to indoor exercise. See Legal Mem. (Doc. 5) at 2. These conditions are penal in character, as courts across the Third Circuit have already recognized with respect to Moshannon. See Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F. 4th 418, 434 (3d Cir. 2026) ("District Courts in our Circuit have recognized the conditions at Moshannon are penal in nature" (citing Grigoryan v. Jamison, No. 2:25-cv-01389, 2025 WL 1257693, at *5 (E.D. Pa. Apr. 30, 2025) (collecting cases)); see also Rivas v. Oddo, No. 3:22-cv-00223, 2023 WL 4361140, at *2 (W.D. Pa. June 27, 2023) ("The [c]ourt has no basis for doubting . . . that the physical facility at Moshannon Valley housing [p]etitioner is unlikely to have changed much since it expressly was a criminal detention center." (punctuation omitted)). Because it is undisputed that Petitioner's detention is comparable to criminal incarceration, the final German Santos factor strongly favors a finding of unreasonableness. German Santos, 965 F.3d at 212-13.

In sum, three German Santos factors weigh in favor of Petitioner—the duration of detention and conditions of confinement factors strongly so. The remaining factor, i.e., reasons for delay, is neutral. No German Santos factor favors Respondents.[7] Accordingly, the Court will grant the Petition to the extent that Petitioner seeks an order from this Court directing that he receive a bond hearing before an immigration judge. "At [Petitioner's] bond hearing, the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos, 965 F.3d at 214 (citing Chavez-Alvarez, 783 F.3d at 477-78); see also Michelin, 2023 WL 5044929, at 8 ("[T]he directive that

[7] The Court has considered Respondents' remaining arguments and found them to be unavailing. Respondents' position that ICE's internal custody reviews were the only process due under the circumstances is inconsistent with Third Circuit precedent—reflected in Respondents' near-complete reliance upon unreported, out-of-circuit decisions to support this argument. The Third Circuit found the regulations that governed Petitioner's ICE reviews to "themselves 'raise serious constitutional concerns.'" Guerrero-Sanchez, 905 F.3d at 227 (quoting Diouf, 634 F.3d at 1091). "Although Arteaga-Martinez abrogated the Third Circuit's statutory analysis of § 1231(a)(6) and its application of the canon of constitutional avoidance [in Guerrero-Sanchez], the Third Circuit's discussion on why it was necessary to invoke that cannon, including its concerns about the insufficient process afforded to noncitizens in the regulations, remains persuasive." Michelin, 2023 WL 5044929, at *8. Here, Petitioner's two ICE custody reviews were conducted by an ICE Deputy Field Office Director, Resp. Ex. 9 at 4, and ICE "Deportation Officers," Resp. Ex. 10 at 2, i.e., "not ostensibly neutral decision makers such as [an] immigration judge[]," Guerrero-Sanchez, 905 F.3d at 227. There is no evidence of any opportunity for Petitioner to appeal the decisions of these officials. And Petitioner bore the burden of proof in each ICE review, see 8 C.F.R. § 241.4(d)(1), a practice inconsistent with constitutional requirements for such an extended and severe deprivation of liberty. See German Santos, 965 F.3d at 213 ("When the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence."). Given the shortcomings of the process afforded to Petitioner, ICE's custody reviews do not alter the Court's German Santos analysis. Also, Respondents' argument that the Court should ignore a violation of Petitioner's due process rights because Petitioner purportedly failed to exhaust administrative remedies is similarly unpersuasive under Third Circuit law. See United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) ("We . . . excuse prudential exhaustion 'when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights.'" (quoting Susquehanna Valley All. v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 245 (3d Cir. 1980)).

the government has the burden at the bond hearing is consistent with the relief the Third Circuit held was appropriate in German Santos. It is also consistent with the Third Circuit's discussion in Guerrero-Sanchez explaining why placing the burden on the government provides the appropriate level of procedural protections to the noncitizen." (internal citations omitted)).

## II. ORDER

For the above reasons, the Petition for Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 4) is **GRANTED** to the extent that Respondents shall arrange for Petitioner to have a bond hearing before an immigration judge within 30 calendar days of the date of this order. **IT IS FURTHER ORDERED** that, consistent with the process set forth in German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203, 213-14 (3d Cir. 2020), in order to continue detaining Petitioner, Respondents must make an individualized showing at the bond hearing, by clear and convincing evidence, that Petitioner's detention is needed to prevent Petitioner from fleeing or harming the community.

IT IS SO ORDERED.

August 26, 2026

s/Cathy Bissoon
Cathy Bissoon
Chief United States District Judge

cc (via First-Class U.S. Mail):

Juan Antonio Rodriguez Paredes
A094-318-754
Moshannon Valley Processing Center
555 Geo Drive
Philipsburg, PA 16866

cc (via ECF email notification):

All Counsel of Record